UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA JANE GRIDER,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:21-cv-00453-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE COMMISSIONER<br><br>(Doc. 18) |

    Plaintiff Jessica Jane Grider ("Plaintiff") commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") for lack of disability. (Doc. 1). Plaintiff filed a motion for summary judgment on June 24, 2022, to which Defendant filed an opposition on August 8, 2022. (Docs. 18, 20). The matter is currently before the Court on the Administrative Record ("AR") and the parties' briefs, which were submitted without oral argument.[1] (Doc. 12).

    For the reasons set forth below, the Court will deny Plaintiff's motion for summary judgment and affirm the Commissioner.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge and this action has been assigned to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c)(1). (Doc. 11).

## I. BACKGROUND

Plaintiff filed an application for supplemental security income ("SSI") on February 27, 2017, which alleges disability beginning on December 31, 2015. (AR 23). Plaintiff's claim was initially denied on May 3, 2017, and upon reconsideration on July 20, 2017. *Id*. Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on August 16, 2017. *Id*. Plaintiff's request was accepted and the ALJ held a video hearing on March 14, 2019. (AR 41). Plaintiff appeared at the hearing and was represented by counsel. A vocational expert ("VE") also appeared and testified during the hearing. *Id*.

The assigned ALJ issued his decision on August 1, 2019. (AR 35). The ALJ engaged in the five-step sequential evaluation process for determining whether an individual is disabled under 20 C.F.R. § 416.920(a).[2] At step one, the ALJ found that Plaintiff had not engaged in any work activity since her application date. (AR 25).

At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine, major depressive disorder ("MDD"), post-traumatic stress disorder ("PTSD"), and history of alcohol use disorder were severe impairments. (AR 26). However, Plaintiff's migraine headaches, asthma, and bilateral hand pain/numbness were either non-severe impairments or non-medically determinable impairments. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)). Specifically, the ALJ found that Plaintiff's conditions did not meet or medically equal the criteria of listings 12.04 (depressive, bipolar, and related disorders) and 12.15 (PTSD). In reaching this decision, the ALJ considered whether the "paragraph B" criteria were satisfied. (AR 27).[3]

---

[2] The ALJ's decision is summarized herein to the extent it is relevant to the issues brought for review by Plaintiff.

[3] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate,"

1    The ALJ found a mild limitation in Plaintiff's ability to understand, remember, or apply information. (AR 27). The ALJ further found a moderate limitation in Plaintiff's ability to interact with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. (AR 27-28).

The ALJ also considered whether the "paragraph C" criteria were satisfied and found no record evidence establishing: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms and signs of her mental disorder and (2) minimal capacity to adapt to changes in her environment or to demands that are not already a part of Plaintiff's daily life. (AR 28).

The ALJ found Plaintiff's residual functional capacity ("RFC") to be as follows: "the claimant has the [RFC] to perform medium work as defined in 20 C.F.R. 416.967(c). She retains the ability to perform simple, routine tasks. She can make simple, work-related decisions. She can interact with the public on an occasional basis." (AR 28).

At step four, the ALJ considered Plaintiff's symptoms and the extent to which those symptoms could be accepted as consistent with the objective medical evidence and the other evidence in the record. (AR 28-29). The ALJ found that Plaintiff's mental status examinations, for the most part, did not reveal any abnormal findings aside from a depressed, anxious mood and affect. The ALJ further pointed to certain instances in the record where Plaintiff reported that her symptoms were well controlled by her medical regiments. (AR 30 citing AR 439, 553). The ALJ referred to record citations wherein Plaintiff's treating providers describe her normal speech, cooperative behavior, logical thought processes, intact attention span, unaffected memory, intact insight, and intact judgment. (AR 30 citing AR 318-19; 323-24, 328-30; 460-61, 517-18, 680-81). Although Plaintiff reported hallucinations, the ALJ found no evidence that she responded to internal stimuli during medical examinations. *Id*.

The ALJ further analyzed an intelligence test conducted by consultative examiner Dr. G.

---

"marked," or "extreme." *Id*. To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.*

3

Seward, Psy.D, and found that it did not support Plaintiff's reported impairment severity. (AR 30). For example, the ALJ found that while Plaintiff reported diminished memory, including that she once forgot that she had a daughter (AR 680), Plaintiff's formal intelligence testing revealed that she does not suffer from memory deficits. (AR 30 citing AR 693); *see* (AR 692). The ALJ supported this by referring to a psychological evaluation conducted by Dr. Seward, wherein she received an average score in the areas of immediate memory, delayed memory, auditory memory, and visual memory. *Id*. (citing AR 691). The ALJ further found that Plaintiff's formal test results were consistent with the examination notes throughout the record, which noted no deficiencies in Plaintiff's memory. (AR 30 citing AR 315, 319, 324, 461, 505, 518).

The ALJ further found that Plaintiff received conservative treatment for her severe mental impairments. He found no evidence that Plaintiff had ever presented to the emergency department or been hospitalized as a result of her mental impairments following her alleged onset date. (AR 31). The ALJ took this conservative treatment as evidence that Plaintiff's mental impairments are not as severe as she alleges them to be. (AR 31).

Relatedly, the ALJ found that Plaintiff's activities of daily living did not support the alleged severity of her mental impairments. The ALJ found that Plaintiff retained her ability to perform her activities of daily living like shopping or driving, without assistance. (AR 31 citing AR 669). Plaintiff also looked for work and volunteer activities, which the ALJ found as evidence that Plaintiff can perform some work activities. *Id*. (citing AR 327, 391).

The ALJ considered the opinions of State agency mental health consultants Joan Joynson Ph.D., and E. Murillo, M.D. Drs. Joynson and Murillo both opined that Plaintiff is able to perform simple, repetitive work instructions and respond appropriately to others in a position with low public contact. (AR 31 citing AR 75, 88). The ALJ gave great weight to both of those opinions as they are consistent with the mental status examinations in the record and provided detailed explanations supporting the doctors' opinions. (AR 31).

The ALJ also considered the May 2019 opinion written by Dr. Seward. (AR 33). Dr. Seward opined that Plaintiff experienced no more than moderate limitations in the following areas:

4

> (1) maintaining regular attendance in the workplace; (2) performing work activities on a consistent basis; (3) performing work activities without special or additional supervision; (4) completing a normal workday or workweek without interruptions from her psychiatric condition; (5) accepting instructions from supervisors; (6) interacting with co-workers and the public; and (7) dealing with the usual stresses encountered in the competitive work environment.

(AR 33 citing AR 693-94). The ALJ gave Dr. Seward's opinion partial weight. The ALJ found that the absence in Dr. Seward's assessment of any "marked" or "extreme" limitations was consistent with Plaintiff's relatively normal mental health examinations and intelligence testing. (AR 33). However, the ALJ found Dr. Seward's opinion to be vague, as it was not presented in functionally relevant terms. *Id*.

At step five, the ALJ found that the testimony provided by the VE at the hearing was consistent with the information contained in the Dictionary of Occupational Titles. Accordingly, the ALJ rendered a finding of "not disabled" as Plaintiff could work as a Machine Feeder (DOT No. 699.686-010); Industrial Cleaner (DOT No. 381.687-018); and Vehicle Cleaner (DOT No. 919.687-014).

Plaintiff requested review from the Appeals Council on September 18, 2019, and received a notice denying her request on May 5, 2020. (AR 13). Thereafter, Plaintiff brought the instant action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1).

## II.     LEGAL STANDARD

### A.     The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[4] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

5

step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."). The RFC is not a medical opinion. 20 C.F.R. § 404.1527(d)(2). Rather, it is a legal decision that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B. Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396,

409 (2009).

## III.     DISCUSSION

Plaintiff advances two arguments for the Court's review: (1) that the ALJ improperly discounted the opinion of Dr. Seward, and (2) that the ALJ failed to incorporate limitations from Drs. Joynson and Murillo's medical opinions, despite assigning their opinions great weight.

### A.     The ALJ Properly Discounted Dr. Seward's Opinion

As a preliminary matter, the parties disagree as to which regulations apply to Plaintiff's claim on review. *Cf.* (Doc. 18 pp. 10-11, citing 20 C.F.R. § 416.920c, *with* Doc. 19 pp. 4-5). As the Commissioner points out in his opposition brief, the amended regulations under 20 C.F.R. § 416.920c are applicable only to claims filed after March 27, 2017. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Since Plaintiff's application for SSI was filed on February 27, 2017, the revised regulations are not applicable.

Turning to Plaintiff's claims, she first asserts that the ALJ erred when he gave Dr. Seward's opinion only partial weight. (Doc. 18 p. 11). Dr. Seward opined that Plaintiff lacked "marked" or "extreme" limitations which the ALJ found consistent with her relatively normal mental status examinations. However, the ALJ further found that Dr. Seward's opinion was vague because it was not in "functionally relevant terms." (AR 33).

Plaintiff disputes the ALJ's conclusion that she had "relatively normal mental health status examinations" and argues that the ALJ committed error by picking out a few isolated instances of improvement. (Doc. 18 p. 12) (citing *Pallesi v. Berryhill*, 696 Fed. Appx. 798, 800 (9th Cir. 2017); *Garrison*, 759 F.3d at 1017). She points to instances in the record where her examinations documented adverse conditions such as depression, anxious mood, irritable affect, hypervigilance, auditory and visual hallucinations, non-linear thought processes, poor judgment, suicidal/homicidal ideations, and tearfulness. (AR 314-315, 318, 323, 327-29, 336-37, 339, 341, 346, 517-18, 681).

As set forth above, the pertinent question on review is not whether an alternative reading of the record would support a finding of disability, but rather, whether the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir.

2022). Here, the ALJ provided sufficient evidence from the record to support his conclusion that Plaintiff's mental impairments are not as severe as she alleges. (AR 30 citing AR 318-19, 323-24, 328-30, 460-61, 517-18, 680-81). There is a significant overlap between Plaintiff's proffered citations to the record and the portions relied on by the ALJ in support of his findings. To a lesser extent, the parties similarly rely on the same portions of the administrative record in support of their conclusions.[5] The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Because the evidence relied on by the parties is susceptible to more than one rational interpretation, the Commissioner's conclusion prevails. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff further disputes the ALJ's finding that Dr. Seward's opinion was vague because it was not in "functionally relevant terms." (Doc. 18 pp. 12-13). She claims it is unclear how Dr. Seward's opinion is vague and what information the ALJ used in discounting his opinion and, thus, that substantial evidence does not support the ALJ's discounting of the opinion.

The Commissioner contends that the ALJ correctly gave Dr. Seward's opinion partial weight because it was vague, which is a "specific and legitimate reason" for giving less weight to the opinion of a physician. (Doc. 20 p. 14) (citing *Carlson v. Comm'r of Soc. Sec.*, No. 1:16-cv-01459-JLT, 2018 WL 1470471, at *10 (E.D. Cal. Mar. 26, 2018); *King v. Comm'r of Soc. Sec. Admin.*, 475 Fed. Appx. 209, 210 (9th Cir. 2012)).

In contrast to his characterization of Dr. Seward's opinion as "vague," the ALJ found the opinions of two State agency mental health consultants to be supported by "detailed explanation." (AR 31). A comparison of Dr. Seward's opinion to these State agency opinions reveals how the ALJ reasonably assessed Dr. Seward's opinion to be "vague." In particular, the State agency opinions identified qualitative limitations to Plaintiff's functional capacities *and* supported those assessments with detailed narratives. *E.g.* (AR 73-74) (linking general assessments of non-

---

[5] For example, Plaintiff cites to a progress note dated November 3, 2016, by Dr. Obie Jon Hicks M.D., which is also relied on by the ALJ. (AR 327- 330). The note documents that Plaintiff had a tearful affect and experienced transient episodes of hearing whispers. However, the same note lists a logical thought process, no suicidal/homicidal thoughts, intact attention span, average IQ, as well as intact insight and judgment. *Id.*

9

significant or moderate concentration/persistence limitations to specific workplace implications); (AR 87) (similarly linking general assessments of non-significant or moderate social interaction limitations to specific workplace realities). Thus, the ALJ did not err by finding Dr. Seward's opinion less persuasive due to its vagueness and lack of functionally relevant terms. *See Nadine T.-W. v. Saul*, No. C18-1878-MAT, 2019 WL 3552346, at *3 (W.D. Wash. Aug. 5, 2019) ("Plaintiff argues that the ALJ's discounting of Dr. Reilly's conclusions as vague is problematic because the ALJ adopted the State agency opinions that also rate Plaintiff's limitations as 'mild,' 'moderate,' 'marked,' or 'severe.' Plaintiff overlooks a crucial distinction between Dr. Reilly's opinion and the State agency opinions, however: the State agency consultants not only rated Plaintiff's limitations in various areas, but also provided a narrative description of her capabilities and/or limitations in those areas.").[6]

### B. The ALJ Properly Reconciled Limitations Across the Three Relevant Opinions

Finally, Plaintiff argues that the ALJ erred by not crediting certain portions of Dr. Seward's opinion, despite assigning his findings partial weight. (Doc. 18 p. 13) (citing *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012)). She argues that those portions of Dr. Seward's opinion were not contradicted by her treating psychiatrist and the State Agency opinions, which opined that Plaintiff is limited to work with "few coworkers." (AR 74, 87)

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). If an ALJ assigns substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC, or provide an explanation for why he chose not to accept them. *Sahyoun v. Saul*, No. 2:18-cv-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020).

Turning to the opinions at issue, Dr. Joynson completed a Mental Residual Functional Capacity assessment. (AR 73). Dr. Joynson found no significant limitation on Plaintiff's ability

---

[6] For this reason, Plaintiff's reliance on *Cox v. Colvin*, 2015 WL 8596436, *13 (N.D. Cal. Dec. 14, 2015) (Doc. 18 at 13) is inapt. In that case, the ALJ rejected an examining physician's opinion for using the same vague and non-vocationally relevant terminology used by another physician the ALJ credited.

to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (AR 74).   She provided a narrative explanation that "Clmt is able to adequately respond to supervision and coworkers as well as the general public.  She is better suited for work having low public contact and few coworkers." *Id*. The ALJ assigned great weight to Dr. Joynson's opinion.  (AR 31).  Dr. Murillo made nearly the same assessments (*see* AR 87-88).  Dr. Seward opined that Plaintiff has a moderate limitation with her ability to interact with coworkers and with the public. (AR 693). Turning to the ALJ's assigned RFC, he found that Plaintiff can interact with the public on an occasional basis.  (AR 28).

The Court finds that the ALJ properly incorporated the physicians' opinions regarding Plaintiff's ability to interact with the public and with co-workers. An ALJ properly may reject recommendations and instead rely on "specific imperatives" from a source's opinion. *Rounds*, 807 F.3d at 1005-1006; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see Orteza v. Shalala*, 50 F.3d 748,750 (9th Cir. 1995) (finding no error where ALJ reasonably found the statement claimant could adapt to a "sedentary type job" did not mean the physician opined plaintiff could only perform "sedentary work" under the regulations.)

Here, although both Drs. Joynson and Murillo opined that Plaintiff "is better suited for work having low public contact and few coworkers" when responding to whether she is able "to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness" (AR 74, 87), Drs. Murillo and Joynson also provided a more complete opinion stating that "she can follow detailed instructions and respond adequately to supervision and coworkers, as well as the general public. She is better suited for work having low public contact." (AR 75, 88).  Thus, the ALJ reasonably interpreted the opinions of Drs. Joynson and Murillo as identifying an optimal work setting as one where Plaintiff would work with few co-workers, but ultimately opining Plaintiff can respond adequately to supervision and coworkers, necessitation a restriction only to limited interactions with the public. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) ("As we cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence.").

Accordingly, as the ALJ did not error in omitting a "few coworkers" limitation in

Plaintiff's RFC, nor did he err in his presentation of hypothetical questions to the VE during the hearing that needed only to include limitations that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Valentine*, 574 F.3d at 690.

### IV.   CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence and proper analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (Doc. 18) is DENIED and the decision of the Commissioner of Social Security is AFFIRMED.

2. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Jessica Jane Grider, and to close this case.

IT IS SO ORDERED.

Dated:   **March 18, 2024**

UNITED STATES MAGISTRATE JUDGE